UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANTHONY B. RHODES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CV11MLM |
| ) | |
| JO ANNE B. BARNHART, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This is an action brought pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of Jo Anne Barnhart ("Defendant") denying the application for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq., filed by Anthony B. Rhodes ("Plaintiff"). [1] Plaintiff has filed a Brief in Support of the Complaint. [9] Defendant has filed a Brief in Support of the Answer. [11] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). [4]

## I.
## PROCEDURAL HISTORY

On July 15, 2002, Plaintiff filed applications for disability benefits under Title II of the Social Security Act and for Supplemental Security Income Benefits ("SSI") pursuant to Title XVI of the Act. (Tr. 73-75). The applications were denied. (Tr. 64). Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Michael J. Haubner on February 3, 2003. (Tr. 28-57). The ALJ found that Plaintiff was not disabled at anytime though the date of the decision, March 26, 2004. (Tr. 14). Plaintiff filed a timely request for review with the Appeals Council which denied

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Plaintiff's request on November 4, 2004. (Tr. 3-5). In denying the Plaintiff's request for review, the decision of the ALJ became the final decision of the Commissioner.

## II.
## TESTIMONY BEFORE THE ALJ[1]

Plaintiff testified that he owns a tavern at which he sleeps an average of four nights a week; that he sleeps at the tavern for security reasons; that he spends four hours a day observing the tavern via a security system; that he spends two hours a day at the tavern; that he spends six days a week watching the surveillance camera; and that he is on the premises of the tavern a total of twenty hours a week. (Tr. 34-44).

Plaintiff further testified that he hires a bookkeeper to handle the books for the tavern; that he makes a bank deposit once a week; and that he spends an hour each day making telephone calls and looking at the books for the tavern. (Tr. 37, 49).

Plaintiff also testified that he did not lift anything more than five pounds at the tavern and that the only things which he lifted were bank deposit envelopes. (Tr. 49).

## IV.
## THE ALJ'S DECISION

The ALJ considered that Plaintiff, who claimed to be disabled since March 22, 2002, due to heart problems and degenerative disc disease, is the owner of a local tavern; that he reported a loss on his 2002 tax return; that this tax return showed receipts from sales as $63,337, cost of goods sold

---

[1] The only issue which Plaintiff has raised in his Brief in Support of Complaint is that the ALJ incorrectly found that Plaintiff's work activity as a tavern owner since his alleged onset date constitutes substantial gainful activity which precludes his being found disabled under the Act. If a claimant is performing substantial gainful activity, he is not disabled under the Act "regardless of [his] medical condition or [his] age, education, and work experience." 20 C.F.R. § § 416.920(a)(4)(i)& (b). As such, the court need only address facts relevant to the issue of whether Plaintiff was engaged in substantial gainful activity.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

as $36,494, gross income of $26,843, and adjusted business expenses of $36,871. The ALJ further considered that Plaintiff's tax return showed car and truck expenses of $2,004, professional fees of $550, advertising fees of $846, and office expenses of $790. The ALJ further considered that Plaintiff testified at the hearing that he had not yet filed his 2003 tax return and that he did not know whether he had a profit or loss for 2003 despite the fact that the hearing took place "a full month after the end of the calendar year, even though he reportedly does his own bookkeeping." (Tr. 13). The ALJ further considered that Plaintiff testified that he works at the tavern twenty hours a week; that he does an additional five hours of off-premises tavern work a week; that he watches a security camera four hours a day six days a week; that he works two hours a day inside the tavern; and that this equals a total of forty-one hours a week. The ALJ concluded that while Plaintiff's 2002 income tax return shows a loss, this still is considered to be substantial gainful activity because he works over forty hours a week for profit. The ALJ further noted that Plaintiff sleeps in the building four nights a week for security purposes. The ALJ concluded that Plaintiff's activities in regard to the tavern are comparable to those of an unimpaired individual in the "same community engaged in the act of management of the same or similar business." (Tr. 13). As such, the ALJ concluded that Plaintiff's ongoing work activity constituted substantial gainful activity as a self-employed person and that the fact that Plaintiff's self-employment "has not yielded a profit does not negate from the fact that he actively runs his business in anticipation of pay or profit." (Tr. 13). The ALJ found, therefore, that Plaintiff was not disabled.

## V.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § § 416.920, 404.1529. In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § § 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities …" Id. Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations. 20 C.F.R. § § 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id. Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Young v. Afpel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will "review [claimants]' residual functional capacity and the physical and mental demands of the work [claimant] [has] done in the past." Id. Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § § 416.920(f), 404.1520(f). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person's with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) (holding that the at Step 5 the burden of production shifts to the Commissioner, although the Commissioner is to required to reestablish the RFC which the claimant must prove at Step 4).

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Education and Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months …." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). The plaintiff has the burden of proving that he has a disabling impairment. 42 U.S.C. § 423(d)(1); Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993); Roach v. Sullivan, 758 F. Supp. 1301, 1306 (E.D. Mo. 1991).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health and Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 841(8th Cir. 1992); Ricketts v. Sec'y of Health and Human Servs., 849 F.2d 661, 664 (8th Cir. 1990); Jeffery v. Sec'y of Health and Human Servs., 849 F.2d 1129, 1132 (8th Cir. 1988). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health and Human Servs., 850 F.2d 425, 426 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.

7

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

Residual functional capacity is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b-e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-7 (8th Cir. 1982) (en banc). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Id. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Nevland, 204 F.3d at 857.

## VI.
## DISCUSSION

As stated above, the issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff is engaged in substantial gainful activity and, therefore, is not disabled. Onstead, 962 F.2d at 804. The possibility of drawing two inconsistent conclusions from the evidence does not prevent the Commissioner's findings from being supported by substantial evidence. Browning v. Sullivan, 958 F.2d 817, 821 (9th Cir. 1991). Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. Krogmeier, 294 F.3d at 1022.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

As stated above, the only issue which Plaintiff has raised in his Brief in Support of Complaint is that the ALJ incorrectly found that Plaintiff's work activity as a tavern owner since his alleged onset date is comparable to that of unimpaired individuals and that, therefore, Plaintiff's work activity constitutes substantial gainful activity which precludes his being found disabled under the Act. Plaintiff contends that because his tavern did not show a profit his ownership of and his activities related to the tavern can not be the basis of a finding that he was engaging in substantial gainful activity.

As stated above, at Step 1 of the sequential analysis, if a claimant is found to be engaging in substantial gainful activity, the claimant will be found not disabled. 20 C.F.R. § 404.1510 defines substantial gainful activity as work that "(a) Involves doing significant and productive physical or mental duties; and (b) Is done (or intended) for pay or profit." 20 C.F.R. § 404.1572(b) defines gainful work activity as "work activity that [is done] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, *whether or not a profit is realized.*" (emphasis added).

20 C.F.R. § 404.1575 establishes Regulations applicable to self-employed persons and provides as follows, in relevant part:

> (a) If you are a self-employed person. If you are working or have worked as a self-employed person, we will use the provisions in paragraphs (a) through (d) of this section that are relevant to your work activity. We will use these provisions whenever they are appropriate, whether in connection with your application for disability benefits (when we make an initial determination on your application and throughout any appeals you may request), after you have become entitled to a period of disability or to disability benefits, or both. We will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. *We will not consider your income alone* because the amount of income you actually receive may depend on a number of different factors, such as capital investment and profit-sharing agreements. We will generally consider work that you were forced to stop or reduce to below substantial gainful activity after 6 months or less because of your impairment as an unsuccessful work attempt. See paragraph (d) of this section. *We will evaluate your work activity based on the value*

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*of your services to the business regardless of whether you receive an immediate income for your services.* We determine whether you have engaged in substantial gainful activity by applying three tests. If you have not engaged in substantial gainful activity under test one, then we will consider tests two and three. The tests are as follows:

(1) Test One: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. Paragraphs (b) and (c) of this section explain what we mean by significant services and substantial income for purposes of this test.

(2) Test Two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.

(3) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

(b) What we mean by significant services.

(1) If you are not a farm landlord and you operate a business entirely by yourself, any services that you render are significant to the business. *If your business involves the services of more than one person, we will consider you to be rendering significant services if you contribute more than half the total time required for the management of the business, or you render management services for more than 45 hours a month regardless of the total management time required by the business. ...*

(c) What we mean by substantial income. We deduct your normal business expenses from your gross income to determine net income. Once we determine your net income, we deduct the reasonable value of any significant amount of unpaid help furnished by your spouse, children, or others. Miscellaneous duties that ordinarily would not have commercial value would not be considered significant. We deduct impairment-related work expenses that have not already been deducted in determining your net income. Impairment-related work expenses are explained in § 404.1576. We deduct unincurred business expenses paid for you by another individual or agency. An unincurred business expense occurs when a sponsoring agency or another person incurs responsibility for the payment of certain business expenses, e.g., rent, utilities, or purchases and repair of equipment, or provides you with equipment, stock, or other material for the operation of your business. We deduct soil bank payments if they were included as farm income. That part of your income remaining after we have made all applicable deductions represents the actual value of work performed. The resulting amount is the amount we use to determine if you have done substantial

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

gainful activity. We will generally average your income for comparison with the earnings guidelines in §§ 404.1574(b)(2) and 404.1574(b)(3). See § 404.1574a for our rules on averaging of earnings. (emphasis added).

20 C.F.R. § 404.1574(b)(6) provides that despite earnings which otherwise are not high enough to ordinarily show that a claimant engaged in substantial gainful activity, a claimant can be found to be engaging in substantial gainful activity as follows:

(ii) Beginning January 1, 2001, if your average monthly earnings are equal to or less than the amounts determined under paragraph (b)(2) of this section, we will generally not consider other information in addition to your earnings unless there is evidence indicating that you may be engaging in substantial gainful activity or that you are in a position to defer or suppress your earnings.

(iii) Examples of other information we may consider include, whether–

(A) *Your work is comparable to that of unimpaired people in your community who are doing the same or similar occupations as their means of livelihood, taking into account the time, energy, skill, and responsibility involved in the work, and*
(B) Your work, although significantly less than that done by unimpaired people, is clearly worth the amounts shown in paragraph (b)(2) of this section, according to pay scales in your community. (emphasis added).

Also, Social Security Ruling ("SSR") 83-34, 1983 WL 31256, at *1, states in relevant part, in regard to self-employed persons:

Under the disability provisions of the law ... a person who is engaging in SGA is not eligible for payment of disability benefits. SGA is defined in the regulations as work "that involves doing significant physical or mental activities ... [and] is the kind of work usually done for pay or profit...." "Significant activities" are useful in the operation of a business and have economic value. Work may be substantial even if it is performed on a part-time basis, or even if the individual does less, has less responsibility, or makes less income than in previous work. Work activity by a self-employed person is gainful if it is the kind of work usually done for profit, whether or not a profit is realized. ... By working, an individual may demonstrate that he or she is, at least during the time of working, able to engage in SGA. ...

In determining whether a self-employed individual is engaging in SGA, consideration must be given to the individual's activities and their value to his or her business. Self-employment income alone is not a reliable factor in determining SGA, since it is influenced not only by the individual's services but also by such things as market conditions, capital investments, the services of other people, and agreements on distribution of profits. An individual's services may help build up capital assets

11

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

during a period of development when no profits are evident, or they may reduce losses during temporary periods of poor business conditions. On the other hand, a person who is incapable of rendering valuable services may receive a large income solely because of his or her capital investment in the business. Hence, it is necessary to consider the economic value of the individual's services, regardless of whether an immediate income results from such services.

Additionally, case law provides that a claimant who owns a business can be found to be engaging in substantial gainful activity despite the fact that the business does not show a profit. For example, in Callaghan v. Shalala, 992 F.2d 692, 695-96 (7th Cir.1993), the court found that, while the claimant was economically unsuccessfully in his self-employment, because he did considerable work he engaged in substantial gainful activity. The claimant in Callaghan owned and operated a sandwich shop and an upholstery business, neither of which was financially successful. The court found that the claimant's activity in these businesses was gainful because "he attempted to turn a profit. That he lost money instead ... was irrelevant." Id. at 696. Also, in Byington v. Chater, 76 F.3d 246, 249 (7th Cir. 1996), the court noted that because the claimant's earnings were below the level provided by the Regulations and because he was a self-employed person, the provisions of 20 C.F.R. § 404.1575(a) were applicable. Under this provision it is not determinative that a self-employed person operates a business at a loss. Id. A proper consideration is whether the claimant is performing work "comparable to that of unimpaired people in [his or her] community who are doing the same or similar occupations as their means of livelihood, taking into account the time, energy, skill, and responsibility involved in the work." Id. at 250.

The ALJ in the matter under consideration acknowledged that Plaintiff's 2002 tax return showed that his business operated at a loss. The ALJ, however, considered pursuant to 20 C.F.R. § 404.1575 and SSR 83-34 that this loss does not preclude a finding that Plaintiff engaged in substantial gainful activity during the period in question. The ALJ considered Plaintiff's duties and responsibilities in regard to his tavern including the fact that spent in excess of forty hours a week in

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

activities related to the tavern. The ALJ concluded that Plaintiff rendered significant services in the management and operation of the tavern which activities are comparable to that of an unimpaired person engaged in the management or the same or similar business. This analysis is consistent with 20 C.F.R. § 404.1575, Tests 2 and 3, and other Regulations set forth above. As stated above, it is clear from the Regulations and case law that a claimant's work activity as a self-employed person can constitute substantial gainful activity despite the fact that the claimant's business operates at a loss. See 20 C.F.R. § § 404.1574(b)(6), 404.1575(a)-(c).

Significantly, Plaintiff does not dispute factual statements made by the ALJ relevant to his finding that Plaintiff's activities as a tavern owner constitute substantial gainful activity but merely disputes his conclusion based on those facts.[2] As the ALJ's conclusions are consistent with the Regulations and case law, the court finds that the ALJ's decision is supported by substantial evidence and that, therefore, Plaintiff should be denied the relief which he seeks.

---

[2] In support of his position that he was not engaged in substantial gainful activity, Plaintiff cites Petersen v. Chater, 72 F.3d 675 (8th Cir. 1995), where the court found that the ALJ erred in his finding that the claimant engaged in substantial gainful activity despite the fact that his earnings fell below the level set by the Regulations. The court notes that Petersen is factually distinguishable as the claimant in that case was a farm landlord and the Regulations specifically address what constitutes substantial gainful activity for such a claimant. See 20 C.F.R. §§ 404.1575(b)(2), 404.1082(c). Pursuant to the Regulations a farm landlord performs "significant services" if he "materially participates" in the production or the management of the rented farm. In Petersen, 72 F.3d at 677, the court acknowledged alternative tests for determining whether a self-employed person engages in substantial gainful activity and made it clear that it did not reach its conclusion because the claimant's activities were "comparable to that of unimpaired individuals in the community who are in the same or similar businesses as their means of livelihood" upon which test the ALJ in the matter under consideration relied. Id. Further, as a farm landlord, the claimant in Petersen rented his farm to a tenant and then enrolled the entire farm in the United States Department of Agriculture's ten-year Conservation Reserve Program ("CRP"). Thus, unlike Plaintiff in the matter under consideration, the claimant in Petersen was not engaging in activities which were comparable to that of unimpaired with individuals in the community who are engaged in a similar business as provided by Tests 2 and 3 of 20 C.F.R. § 404.1575(a). Tests 2 and 3 were not applicable to the claimant in Petersen.

13

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

# VI.
# CONCLUSION

The Court finds that the Commissioner's decision is supported by substantial evidence contained in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Brief in Support of Complaint is **DENIED**; [9]

**IT IS FURTHER ORDERED** that the relief sought by Defendant Jo Anne B. Barnhart in her Brief in Support of Answer is **GRANTED**; [11]

**IT IS FINALLY ORDERED** that a separate Judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum Opinion.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of June, 2005.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com